UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| 828 Hamilton Inc., | **16-cv-5073 (ARR) (SMG)** |
| Plaintiff, | |
| | **Opinion & Order** |
| v. | |
| United Specialty Insurance Company, | **Not for electronic or print publication** |
| Defendant. | |
| United Specialty Insurance Company, | |
| Third-Party Plaintiff, | |
| v. | |
| Yiming Zhou, | |
| Third-Party Defendant. | |

ROSS, United States District Judge:

Yiming Zhou ("Zhou") was injured while working at a construction site owned by 828 Hamilton, Inc. ("828 Hamilton"). After his injury, Zhou sued 828 Hamilton, among others, in New York state court for violations of New York Labor Law ("the underlying state action"). The question before this court is whether United Specialty Insurance Company ("United") is required to defend and indemnify 828 Hamilton in the underlying state action. United's obligation to defend and indemnify 828 Hamilton turns on whether Zhou's injury is covered by an insurance contract between 828 Hamilton and United ("the 828-United insurance contract"). The parties have cross-moved for summary judgment on the issue of coverage. For the following reasons, the parties' cross-motions are denied.

# BACKGROUND

## A. Parties

On August 14, 2014, Zhou was injured while working on a construction project at 828 64th Street in Brooklyn, New York ("the project"). *See* United Statement Pursuant to Local Rule 56.1 in Supp. Mot. Summ. J. ¶¶ 9, 13, ECF No. 34-20 ("United 56.1"); Zhou Counter-Statement to United 56.1 Statement of Material Facts ¶ 9, ECF No. 35-3 ("Zhou Counter-Statement"). The building at 828 64th Street is owned by 828 Hamilton, a real estate holding company that owns real estate in Brooklyn. *See* Copernicus T. Gaza Decl. in Supp. United Mot. Summ. J. ("Gaza Decl."), Ex. J ("Li Dep."), at 20:24–21:14, ECF No. 34-12. David Li ("Li") is the president of 828 Hamilton. *Id.* at 23:02-04. In 2013, 828 Hamilton purchased an insurance policy from United; the insurance policy requires United to defend and indemnify 828 Hamilton in connection with certain bodily injury and property damages occurring at the project. *See* Gaza Decl., Ex. A ("828-United Contract"), at USIC0010–0011, ECF No. 34-2.

## B. Procedural History

After his accident, Zhou sued 828 Hamilton, among others, in New York state court for violations of New York Labor Law. *See* Gaza Decl., Ex. G, at 2, ECF No. 34-9 (June 29, 2017 Decision & Order). Zhou's injury occurred "when he fell through a temporary opening in the roof that was inadequately covered and secured." *Id.* at 2. Labor Law § 240(1) "imposes a non-delegable duty upon owners and general contractors to provide safety devices to protect workers from elevation related risks." *Id.* at 5. On June 29, 2017, the Honorable Bernard J. Graham granted Zhou's motion for summary judgment against 828 Hamilton for violating § 240(1). *Id.* at 6-7.[1]

---

[1] Zhou also added Bright Way Cabinets and Home Center, Inc. ("Bright Way") and Fortuna Design & Construction, Inc. ("Fortuna") as defendants. Zhou claimed that Bright Way, as his employer, and Fortuna, as the general

On August 4, 2016, 828 Hamilton sued United in New York state court, alleging that the 828-United insurance contract requires United to defend and indemnify 828 Hamilton in the underlying state action. *See* Compl. ¶ 20, ECF No 1-2. United removed the case to federal court on diversity jurisdiction grounds. Notice of Removal, ECF No. 1. Before me now are the parties' cross-motions for summary judgment: 828 Hamilton seeks summary judgment regarding United's duty to defend and indemnify it in the underlying state action, *see* 828 Hamilton Notice Mot. Summ. J., ECF No. 33, while United seeks summary judgment that it is under no such obligation, *see* United Notice Mot. Summ. J., ECF No. 34. United has also brought a third-party action in this court against Zhou seeking a declaration that Zhou will be bound by this court's determination that it does not have to defend and indemnify 828 Hamilton. *See* Third-Party Compl., ECF No. 6. Zhou in turn moves this court to find that United is required to defend and indemnify 828 Hamilton. *See* Zhou Notice Mot. Summ. J., ECF No. 32.[2] United's obligations turn on whether Zhou's injury is covered by the 828-United insurance contract.

### C. The 828-United Insurance Contract

---

contractor on the project, were also strictly liable to him for violating § 240(1). *Id.* at 3. Judge Graham granted summary judgment against all three parties. *See id.* at 6 ("Under these facts, summary judgment is appropriate on the issue of liability against the owner, 828 Hamilton, the employer, Bright Way[,] and the general contractor, Fortuna.").

[2] Thus, although Zhou and 828 Hamilton (and therefore Li) were on opposite sides in the underlying state court action, they are on the same side in this federal court action, i.e., they are seeking summary judgment that United is required to defend and indemnify 828 Hamilton in state court.

The complex relationship between the parties has two consequences worth noting. First, although Zhou and Li seek the same outcome in federal court, Li's deposition testimony often supports United's argument for summary judgment. Thus, United frequently cites to Li's testimony. Second, because 828 Hamilton and Zhou are moving for summary judgment on the same grounds, 828 Hamilton relies heavily on Zhou's submissions. *See, e.g.*, 828 Hamilton Notice Mot. Summ. J. 2 (stating that 828 Hamilton will rely on Zhou's memorandum of law and exhibits); 828 Hamilton Decl. in Opp'n to United Mot. Summ. J. 1–2, ECF No. 36 ("As. . . for 828's opposition to [United's] motion, 828 . . . adopts, and incorporates Points II, III(a), III(b), VI, VII, VIII of . . . Zhou's Memorandum of Law in Opposition to United's Motion for Summary Judgment."); 828 Hamilton Reply to United Opp'n to Mot. Summ. J. 1, ECF No. 40 ("In lieu of submitting a redundant Reply, 828 hereby adopts the factual allegations and legal arguments as set forth in [Zhou's Reply]."). 828 Hamilton's complete motion for summary judgment consists of 11 pages. *Id.* Thus, this opinion cites almost exclusively to the submissions of Zhou and United.

The relevant provisions of the 828-United insurance contract pertain to the contract's coverage and the Contractor Exclusion.

### 1. Coverage

Section I of the contract ("the coverage provision") states that United "will pay those sums that [828 Hamilton] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and that United "ha[s] the right and duty to defend [828 Hamilton] against any 'suit' seeking those damages." 828-United Contract, at USIC0011.

The insurance applies to 'bodily injury' or 'property damage' if:

> (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' and arises out of:
>> (a) Operations performed for you by the 'contractor' at the location specified in the Declarations; or
>> (b) Your acts or omissions in connection with the general supervision of such operations;

*Id.* The contract defines "you" as 828 Hamilton, *id.*; "occurrence" as an accident, *id.* at USIC0019; and "contractor" as Fortuna, *id.* at USIC0018, USIC0010.[3] Thus, the contract covers bodily injury caused by 1) an accident arising out of operations performed for 828 Hamilton by Fortuna, or 2) an accident arising out of 828 Hamilton's acts or omissions in connection with the general supervision of Fortuna's operations.

### 2. The Contractor Exclusion

Under the Contractor Exclusion, the "insurance does not apply to . . . '[b]odily injury' to any contractor, subcontractor or any agent or 'employee' of a contractor or subcontractor that is

---

[3] The definitions section of the 828-United insurance contract states: "'Contractor' means the contractor designated in the Declarations." *Id.* at USIC0018. The Declarations, in turn, designate "Fortuna Design & Construction Inc" as the "Designated Contractor." *Id.* at USIC0010. The contract does not say whether the "Designated Contractor" is the general contractor or a subcontractor. However, Fortuna is the only contractor listed in the agreement.

doing work on or at, or is in any way involved with the operations performed for you at the location specified in the Declarations." 828-United Contract, at USIC0030. The contract does not define "employee," but states that the term includes a "leased worker," a "temporary worker," and a "volunteer worker." *Id.* at USIC0032. United concedes that Zhou is not a leased, temporary, or volunteer worker as defined in the contract. *See* United Reply Mem. of Law in Further Supp. Mot. Summ. J 8, ECF No. 39 ("United Reply"). Zhou's employment status at the time of the accident is critical, because if Zhou falls under the Contractor Exclusion, United is not required to defend and indemnify 828 Hamilton.

### D. Zhou's Employment

#### 1. Undisputed Facts

In addition to owning 828 Hamilton, Li owns Bright Way Cabinets and Home Center, Inc. ("Bright Way"), a kitchen cabinet and building supply store located approximately one block from the project. *See* Li Dep. 13:04–23; *see also* United 56.1 ¶ 45; Zhou Counter-Statement ¶ 45. Li is also the director and officer of Hamilton Services, Inc. ("Hamilton Services"), a business Li created to perform construction on the project. United 56.1 ¶¶ 22–23; Zhou Counter-Statement ¶¶ 22–23. It is undisputed that Hamilton Services was a subcontractor on the project. *See, e.g.*, United 56.1 ¶¶ 28–29; Zhou Counter-Statement ¶¶ 28–29.

Prior to August 2014, Zhou had been employed as a salesperson at Bright Way for a number of years. *See* Gaza Decl., Ex. K ("Zhou Dep."), at 18:04–09, ECF No. 34-14 (estimating that he started working for Bright Way in approximately 2001 or 2002); Li Dep. 140:09–42:15 (claiming that Zhou worked for Bright Way and its predecessor company for approximately six or seven years prior to the accident). Bright Way's payroll records from 2014 demonstrate that Zhou was regularly paid by Bright Way from January through July of that year. *See* Zhou

Statement Pursuant to Local Rule 56.1 in Supp. Mot. Summ. J. ¶ 8, ECF No. 32-1 ("Zhou 56.1");

Michael Flaks Decl. in Supp. Zhou Mot. Summ. J. ("Flaks Decl."), Ex. 8, at 6-11, ECF No. 32-

11 ("Zhou Pay Stubs"); United Counter-Statement to Zhou 56.1 Statement of Material Facts ¶ 8,

ECF No. 37-5 ("United Counter-Statement").

The month before his injury, in July 2014, Li asked Zhou to install phone cables at the

project, and Zhou did so, working at the project for a few days during the month of July. *See*

Zhou 56.1 ¶ 17; United Counter-Statement ¶ 17.[4] In August 2014, Li directed Zhou to install a

thermostat cable at the project, and Li's injury occurred while he was completing this task. *See*

Zhou 56.1 ¶¶ 19, 22; United Counter-Statement ¶¶ 19, 22.[5]

### 2. Disputed Facts

The parties disagree about Zhou's employment status at the time of the accident.

Zhou claims that he understood himself to be a Bright Way employee while working at the

project, *see* Zhou 56.1 ¶ 24, and that Li was acting as boss of Bright Way when he directed Zhou

to perform tasks at the project, *see* Zhou Counter-Statement ¶¶ 33–35. Although Li testified that

Zhou was a Hamilton Services employee while working at the project and that Li, as boss of

Hamilton Services, directed him to install a cable at the project, *see* Li Dep. 95:12–17, 198:22–

99:03, Li also stated that Zhou was a Bright Way employee in July and August of 2014, *see id.* at

138:03–14. Relying on Li's testimony, United contends that "Li considered Zhou to be an

---

[4] United contends that Zhou's work installing the phone cables extended into August. *See* United Counter-Statement ¶ 17.

[5] When Zhou was installing the cable, "he fell through a duct penetration on the second floor roof which was covered with an unsecured piece of styrofoam." Zhou 56.1 ¶ 22; United Counter-Statement ¶ 22. Zhou fell one floor and broke his back. Zhou 56.1 ¶ 23; United Counter-Statement ¶ 23. The hole Zhou fell through was created by a Hamilton Services employee. *See* Li Dep. 73:22–77:17.

employee of Hamilton Services in July and August 2014." United 56.1 ¶ 59.[6] Zhou testified that he had never heard of Hamilton Services. *See* Zhou Dep. 146:11–19. Li disagrees, *see* Li Dep. 180:16–81:04, but provides ambiguous testimony on whether he communicated to Zhou that he would be a Hamilton Services employee while working at the project, *see id.* at 175:04–77:23.

Zhou claims that he worked at both Bright Way and the project while performing tasks at the project in July and August of 2014. *See* Zhou 56.1 ¶ 29. According to Zhou, he started working at Bright Way at 8:00 am on the day of his accident, and he went to the construction site at around 12:00 pm because Li told him to install the thermostat cable there. *See* Zhou 56.1 ¶¶ 20–21. Li testified that in July 2014, Zhou worked "[o]n and off" installing phone cables at the project and worked his regular hours at Bright Way when he was not at the project. *See* Li Dep. 199:04-200:06. Li does not recall Zhou's work schedule in August 2014, *see id.* at 185:20–86:04, but admits that Zhou worked at Bright Way before going to the project site on at least one or two days, *see id.* at 183:21-84:21. Li's testimony suggests that Zhou may have had some control over his work schedule.[7] United claims that "Zhou did not work at Bright Way on the date of his accident" and "[i]f he did report to Bright Way, it was only to report for duty for Hamilton Services." United Counter-Statement ¶¶ 20–21 (citing Li Dep. 190, 195).

---

[6] After Zhou was injured, he applied for and received workers' compensation benefits under Hamilton Services' workers' compensation policy. *See* United 56.1 ¶ 57 (citing Gaza Decl., Ex. K, O); Zhou Counter-Statement ¶ 57. Zhou applied to the New York State Workers' Compensation Board ("WCB") on August 20, 2014, and he received his workers' compensation award on January 5, 2016. *See* Gaza Decl., Ex. O, at 1, 15, ECF No. 34-18. Zhou's application lists his employer as "Hamilton Services, Inc." *Id.* at 8. While Zhou argues that Li considered him a Bright Way employee exclusively, he also concedes that "[p]ost-accident Li may have believed that pursuant to [Worker's Compensation Law] . . . [Hamilton Services] was Zhou's employer for the purpose of coverage." Zhou Counter-Statement ¶ 59.

[7] Li testified on multiple occasions that he could not keep track of Zhou's work schedule. *See, e.g., id.* at 182:14–15, 185:2, 199:11–12. When asked if he left it up to Zhou when to perform his assigned tasks at the project, Li said, "I just said to finish up the work in a few days." *Id.* at 192:23–93:03; *see also id.* at 197:11–21 ("Q: Had the accident not occurred, did you expect Yiming Zhou to work at Bright Way the next day? A: If he finished, yes, but if he stopped, apparently the job is not finished. Q: You left it up to him? He could have returned to Bright Way and worked 8 to 4 the next day and you would have permitted that, correct? A: I would, yes.").

At the end of July 2014, Zhou received his full monthly paycheck from Bright Way. *See* Zhou 56.1 ¶ 18; Zhou Pay Stubs, at 10-11. The day after his accident, on August 15, 2014, Zhou received a check from Hamilton Services for $277.50. *See* United 56.1 ¶ 51; *see also* Gaza Decl., Ex. N, at 2–4, ECF No. 34-17. United claims that the check was for the three days of work that Zhou performed at the project in July 2014. *See* United 56.1 ¶ 52 (citing Li Dep. 222). Zhou, on the other hand, asserts that his July paycheck from Bright Way covered both the work he performed at the project and the work he performed at Bright Way during the month of July. *See* Zhou Counter-Statement ¶ 52; Zhou 56.1 ¶ 18.[8] United also claims that Hamilton Services paid Zhou $1,292.50 on August 20, 2014. United 56.1 ¶ 53 (citing Gaza Decl., Ex. N). Zhou does not recall receiving this paycheck. *See* Zhou Counter-Statement ¶ 53 (citing Zhou Dep. 155–58). According to United, "[t]his payment represented actual time worked for Hamilton Services plus an additional gratuitous payment to compensate Zhou for his time out of work due to the accident." United 56.1 ¶ 54 (citing Li Dep. 222, 236). Zhou alleges that even if Hamilton Services did tender the $1,292.50 check, it was "to Zhou on behalf of Bright Way" for the work Zhou performed on the project and at Bright Way in August 2014. *See* Zhou Counter-Statement ¶ 54. Zhou argues that the only reason he was paid by Hamilton Services, rather than Bright Way, after his accident is because "Li believed [perhaps accurately] that the Bright Way Workers' Compensation ('WC') policy would not cover the accident." Zhou Mem. of Law in Opp'n to United Mot. Summ. J. 17 (alterations in original), ECF No. 35-4 ("Zhou Opp'n").[9] Li,

---

[8] Zhou's statements suggest that he believed the check for $277.50 was paid on behalf of Bright Way for the work he performed at the project in August. *See* Zhou Counter-Statement ¶ 51 ("Zhou admits that he received one check from [Hamilton Services] paid on behalf of Bright Way for 277.50 on 8/15/2014."); Flaks Decl., Ex. 7, at 35, ECF No. 34-10 ("After the accident I received a check from Hamilton Services Inc. for the wages ow[]ed to me for the work I performed up to the day of the accident."); *see also id.* at 50 (displaying the check from Hamilton Services Inc., dated August 15, 2014).

[9] In Zhou's opposition to United's motion for summary judgment, Zhou mentions the work he performed at the project in "April." *See* Zhou Opp'n 16. After reviewing the context of this statement, as well as Zhou's other

however, claims that Hamilton Services would have paid Zhou for his work at the project regardless of whether the accident had occurred. Li Dep. 197:22–98:07.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage, the court's role is not to resolve disputed issues, but rather to determine whether a genuine issue exists that must be tried. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "A dispute is genuine if the evidence could permit a reasonable [trier of fact] to reach a verdict on either side." *Aetna Cas. & Ins. Co. v. United States.*, 685 F. Supp. 334, 336 (E.D.N.Y. 1988). Materiality, on the other hand, "runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting *Anderson*, 447 U.S. at 248).

The moving party bears the burden of demonstrating the absence of a genuine dispute regarding material facts. *See Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). Where, as here, both parties have moved for summary judgment, the court must examine each party's motion on its own merits and draw all inferences against the moving party. *See Morales v. Quintei Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). To overcome a motion for summary judgment, "the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). Only when reasonable minds could not differ as to the import of the evidence before the court

---

submissions stating that he only worked at the project in July and August, I assume this is a typo and that Zhou meant "July."

will summary judgment be appropriate. *Straube v. Fla. Union Free Sch. Dist.*, 801 F. Supp. 1164, 1174 (S.D.N.Y. 1992).

## DISCUSSION

United makes two arguments in support of its claim that it is not required to defend and indemnify 828 Hamilton: first, United asserts that Zhou's injury does not fall within the coverage provision of the 828-United insurance contract; second, United contends that even if Zhou's injury falls within the coverage provision, he is excluded from coverage pursuant to the agreement's Contractor Exclusion. Zhou, on the other hand, seeks a declaratory judgment that he does not fall under the Contractor Exclusion because the underlying state action—in which Justice Graham found Bright Way liable as Zhou's employer—collaterally estops United from arguing that Zhou was anything other than a Bright Way employee.

United's first argument fails because factual disputes make a determination of non-coverage inappropriate at the summary judgment stage. In support of its second argument, United offers five grounds for finding that Zhou falls under the Contractor Exclusion: 1) Zhou was a Hamilton Services employee at the time of the accident because the New York Workers' Compensation Board decision, which declared Zhou an employee of Hamilton Services, has collateral estoppel effect; 2) Zhou was exclusively an employee of Hamilton Services at the time of the accident;[10] 3) Zhou was at least a "special employee" of Hamilton Services at the time of the accident; 4) even if Zhou was an employee of Bright Way at the time of the accident, he was also an agent of Hamilton Services; and 5) even if Zhou was an employee of Bright Way at the time of the accident, Bright Way and Hamilton Services had entered into an implied contract for Zhou to perform work on the project. United's argument for collateral estoppel is unsuccessful

---

[10] United uses the phrase "actual employee" throughout this argument. I understand the term "actual" to mean "exclusive."

because there is insufficient identity of issue between the New York WCB proceeding and this proceeding. United's remaining arguments that Zhou falls under the Contractor Exclusion fail because genuine disputes of material fact preclude a determination in United's favor. Zhou's argument for collateral estoppel is also unsuccessful, because United did not have a full and fair opportunity to litigate the issue of Zhou's employment in state court. Thus, the parties' cross-motions for summary judgment are denied.

### A. United's motion for a summary judgment determination that Zhou's injury does not fall under the coverage provision is denied.

The 828-United insurance contract covers bodily injury caused by 1) an accident arising out of operations performed for 828 Hamilton by Fortuna, or 2) an accident arising out of 828 Hamilton's acts or omissions in connection with the general supervision of Fortuna's operations. *See* United-828 Contract, at USIC0011. United makes a factual argument that Fortuna was only a subcontractor on the project, and thus that Zhou's injury is not covered. *See* United Mem. of Law in Opp'n to 828 Hamilton and Zhou Mots. Summ. J. 4, ECF No. 38-3 ("United Opp'n") (asserting that Fortuna entered into only one contract with 828 Hamilton to perform foundation and structural support work on the project, and that work was completed before Zhou's accident took place in August 2014, so Zhou's bodily injury did not arise out of operations performed for 828 Hamilton by Fortuna and is therefore not covered by the insurance agreement). The only evidence supporting United's claim comes from Fortuna's principal Feng Xin Rong ("Feng"), who testified that the foundation contract was the only contract Fortuna executed relative to the project, that the foundation work was done before Zhou's accident, and that Fortuna was not the general contractor on the project. *See id.* at 6.[11]

---

[11] United also cites to Li's testimony that Fortuna's foundation work on the project was done before Zhou's accident and Zhou's testimony that he did not work on the infrastructure of the project. *See id.* at 5–6. However, the testimony of Li and Zhou does not support the argument that Fortuna was exclusively a subcontractor on the project.

"A general contractor is 'generally responsible for the coordination and execution of all the work at the worksite." *Ryan v. Freidman Decorating Co.*, No. 01 Civ. 0385(MHD), 2005 WL 1802861, at *9 (S.D.N.Y. July 28, 2005) (quoting *Bagshaw v. Network Serv. Mgmt., Inc.*, 668 N.Y.S.2d 161, 163 (N.Y. App. Div. 2004) (citation omitted)); *see also* Black's Law Dictionary (10th ed. 2014) (defining a general contractor as "[s]omeone who contracts for the completion of an entire project, including purchasing all materials, hiring and paying subcontractors, and coordinating all the work."). Thus, if Fortuna was the general contractor on the project, Zhou's injury likely falls under the coverage provision, because Fortuna's responsibilities would have included supervising the work of subcontractors such as Hamilton Services, which created the hole through which Zhou fell, *see* Li Dep. 73:16–77:13; *see also* June 29, 2017 Decision & Order 5 ("[New York Labor Law § 240(1)] imposes a non-delegable duty upon owners and general contractors to provide safety devices to protect workers from elevation related risks."). United alleges that the only reasonable inference from the record is that Fortuna was a subcontractor. However, that is clearly not the case. Zhou provides ample evidence that Fortuna was the general contractor on the project. *See* Zhou Mem. of Law in Reply to United Opp. to Zhou Mot. Summ. J. 2–4, ECF No. 38 ("Zhou Reply"). First, as discussed *supra* n.3, Fortuna is listed as the "Designated Contractor" in the 828-United insurance contract, and while the contract does not explicitly say whether "Designated Contractor" is synonymous with general contractor, Fortuna is the only contractor listed in the agreement. Second, there was a poster outside the project identifying Fortuna as the contractor on the project. *See* Flaks Decl., Ex. 22, ECF No. 38-2. Third, Fortuna received permits from the New York City Department of Buildings to perform work at the project; the permits, which were issued to Feng, list Fortuna as the relevant business and state "General Contractor Registered: GC 030343." *See id.*, Ex. 23,

ECF No. 38-3. Fourth, the record contains a "Subcontract Agreement" in which Fortuna retains Hamilton Services to do work at the project, although the document is signed only by Hamilton Services. *See* Gaza Decl., Ex. L, ECF No. 34-15 ("828 Hamilton-Fortuna Subcontract"). Fifth, Li testified that 828 Hamilton in fact hired Fortuna as the general contractor on the project, and that Fortuna hired most of the subcontractors, advised on safety issues, and was paid to supervise the project. *See* Li Dep. 55:04–56:09, 81:03–86:08, 166:08–12; *see also* Li Dep. Pt. 2 348:12–49:15, ECF No. 34-13. Finally, Justice Graham found Fortuna liable as the general contractor on the project in the underlying state action. *See* June 29, 2017 Decision & Order 6. Because Zhou has set forth evidence demonstrating a genuine dispute over a material fact, i.e., whether Fortuna was the general contractor on the project, summary judgment for United on the issue of coverage is inappropriate.

### B. United's arguments for summary judgment on the grounds that Zhou falls under the Contractor Exclusion are unsuccessful.

#### 1. The New York Workers' Compensation Board determination does not collaterally estop Zhou from claiming he was a Bright Way employee.

If Zhou was an employee of Hamilton Services at the time of the accident, then he falls under the Contractor Exclusion, because Hamilton Services was a subcontractor on the project. *See, e.g.*, United 56.1 ¶¶ 28–29; Zhou Counter-Statement ¶¶ 28–29. United argues that Zhou was an employee of Hamilton Services and is collaterally estopped from claiming he was a Bright Way employee, because the New York WCB declared him an employee of Hamilton Services. *See* United Mem. in Supp. of United Mot. Summ. J. 18–21, ECF No. 34-19 ("United Mot. Summ. J."). "[A] federal court must apply the rules of collateral estoppel of the state in which the prior judgment was rendered." *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000). Under New York law, "[t]he doctrine of collateral estoppel . . . precludes a party from relitigating in a

subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." *Ryan v. New York Telephone Co.*, 467 N.E.2d 487, 490 (N.Y. 1984). "What is controlling is the *identity of the issue* which has necessarily been decided in the prior action or proceeding." *Id.* (emphasis added). "In the application of collateral estoppel with respect to administrative determinations, the burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the issue." *Id.* at 491.

In determining whether there is identity of issue with respect to an employment status determination, the critical inquiry is whether the analysis changes from the first proceeding to the second. *See, e.g.*, *In re Bartenders Unlimited, Inc.*, 289 A.D.2d 785, 787 (N.Y. App. Div. 2001) ("Here, too, the term 'employment' is not defined identically under the relevant statutes . . . . Accordingly, we conclude that the IBA and the Board can each determine which factors it considers most appropriate in reaching its conclusion on the mixed issue of law and fact regarding employment under the relevant statutes.") (internal citations omitted)). Zhou cites a number of cases where New York WCB employment determinations were not given collateral estoppel effect because the definition of employment was different in the second proceeding. *See, e.g.*, *Baker v. Muraski*, 61 A.D.3d 1373, 1374 (N.Y. App. Div. 2009) ("Contrary to the contention of defendants, the determination of the Workers' Compensation Board that plaintiff was not employed by them is not entitled to collateral estoppel effect. Defendants failed to establish identity of issue, a necessary element of collateral estoppel, in view of the differing definitions of 'employee,' 'employer' and 'employed' in [New York] Labor Law . . . [and] Workers' Compensation Law.); *see also Vera v. Low Income Mktg. Corp.*, 145 A.D.3d 509, 510–11 (N.Y. App. Div. 2016) (same). United notes that these cases "involve a prior Board

determination [where] the Board held that the plaintiff was *not* an employee, unlike the Board's determination as to Zhou." United Reply 6. However, the principle remains the same: if, in light of the relevant definitions and facts, the employment determination in the second proceeding could come out differently than the first proceeding, there is no identity of issue.

Here, Zhou asserts that identity of issue does not exist because he could be an employee under New York Workers' Compensation Law ("WCL") but not the insurance contract. *See* Zhou Opp'n 21–22. Zhou notes that New York WCL, which defines "employee" as "a person engaged in the service of an employer," N.Y. Workers' Comp. § 201(5) (McKinney 2016), "expands [the definition of employee] to workers who would not be considered employees under contract, agency and/or tort law such as 'special employees,' construction independent contractors, black car service drivers, certain volunteer workers, and many other non-traditional workers." Zhou Opp'n 22 (citations omitted). According to Zhou, the definition of employee in the insurance policy "clearly means the common, ordinary employee and expands only to a limited, different set of 'non-typical workers.'" *Id.* United rejects Zhou's argument regarding identicality "because Zhou offers no evidence that the Board's determination as to his employment status was based upon anything in the 'array' other than the ordinary concept of 'employee' as contained within the statutes and the Policy definition." United Reply 11. The problem with United's argument is that United, not Zhou, bears the burden of proving identity of issue. *Ryan*, 467 N.E.2d at 491. Further, at the summary judgment stage, I must draw all inferences in favor of the non-moving party. *See Morales*, 249 F.3d at 121. Because the New York WCL definition of employee can be construed as broader than the insurance contract definition, and I do not know the grounds upon which the New York WCB made its determination, summary judgment is improper. Further, as Zhou points out, the employment

analysis before me differs from the one before the New York WCB. While the New York WCB had to determine whether Zhou was a Hamilton Services employee for purposes of claiming workers' compensation benefits, the question in this proceeding is "whether Zhou, who clearly was an employee injured on the job, was employed by [Hamilton Services] or Bright Way." Zhou Opp'n 19–20 n.3. Thus, there is no identity of issue, and the New York WCB determination is not entitled to collateral estoppel effect.

United cites a number of cases in support of its claim that Zhou is bound by the WCB's determination regarding his employment status. *See* United Mot. Summ. J. 19. However, as Zhou correctly points out, these cases simply stand for the proposition that "an injured plaintiff cannot sue the entity that the WCB determined was plaintiff's employer, i.e., Zhou cannot sue [Hamilton Services]." Zhou Opp'n 17–18*; see also Quito v. Guarino*, 287 A.D.2d 554, 555 (N.Y. App. Div. 2001) ("[P]laintiff's exclusive remedy against his employer . . . was limited to recovery under the Workers' Compensation Law."). The underlying state action determined that 828 Hamilton and Bright Way are liable to Zhou for violating New York Labor Law. *See* June 27, 2017 Decision & Order 6–7. If Bright Way wished to challenge Zhou's decision to sue in light of Zhou's collection of workers' compensation benefits from Hamilton Services, it should have done so at the state level. The question before me is simply whether United must defend and indemnify 828 Hamilton, which it is not required to do if Zhou was a Hamilton Services employee under the 828-United insurance contract. Because this is not necessarily the same issue as whether Zhou was a Hamilton Services employee under New York WCL, collateral estoppel does not apply.

United points to *Diontech Consulting Inc. v. Underwriters at Lloyd's*, No. 101964/08, 2009 N.Y. Misc. LEXIS 3700 (N.Y. Sup. Ct. Feb. 27, 2009) as "directly on point." United Mot.

Summ. J. 20. In *Diontech*, the court found that an insurance company properly disclaimed coverage of an injured individual under a Contractor Exclusion, even though the individual claimed he was not an employee of a contractor, because the New York WCB had found the individual to be employed by a contractor and awarded him benefits on that basis. 2009 N.Y. Misc. LEXIS 3700, at *7. While *Diontech* does support United's argument regarding the significance of a WCB determination, the court's reasoning is critical. The court writes that because the determination "whether a particular person is an employee within the meaning of the [WCL] is usually held to present a question of fact for resolution by the [WCB]," the injured individual's "self-serving identification of himself at his deposition as an employee of a third-party is insufficient to raise a triable issue." *Id.* at *8. First, I am not looking at whether Zhou was a Hamilton Services employee within the meaning of New York WCL, but rather whether he was a Hamilton Services employee as defined by the 828-United insurance contract. Second, while the injured individual's "self-serving identification . . . as an employee of a third-party" was insufficient to raise a triable issue as to his employment in *Diontech*, there are facts in this case beyond Zhou's testimony that do raise a triable issue regarding his employment, such as his history with Bright Way, the timing of the Hamilton Services paychecks, and Li's dual role as principal of Hamilton Services and Bright Way. Thus, while *Diontech* may seem on point, it is ultimately not persuasive, and United's argument that Zhou be collaterally estopped from claiming he was a Bright Way employee at the time of the accident does not succeed.

> **2. Genuine disputes of material fact preclude a summary judgment determination that Zhou was exclusively an employee of Hamilton Services at the time of the accident.**

United moves for summary judgment on the grounds that Zhou was exclusively an employee of Hamilton Services at the time of the accident and therefore falls under the

Contractor Exclusion. *See* United Mot. Summ. J. 13–18, 21–22. As United notes in its moving brief, under New York Law,

> [T]he critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results. Factors relevant to assessing control include whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule.

*Bynog v. Cipriani Grp., Inc.*, 802 N.E.2d 1090, 1092–93 (N.Y. 2003). Viewing the evidence in the light most favorable to Zhou, factors (1), (2), and (5) all weigh against Zhou being an exclusive employee of Hamilton Services, because the facts suggest that Zhou worked at his own convenience, was free to work at Bright Way, and did not work on a fixed schedule. Zhou claims he worked at both Bright Way and the project in July and August, *see* Zhou 56.1 ¶ 29, with most of his days spent at Bright Way, *see* Zhou Counter-Statement ¶ 54. Li testified that Zhou worked at Bright Way while performing tasks at the project, *see* Li Dep. 183:21–84:21, 199:22–200:06, that Zhou was an employee of Bright Way in July and August, *id.* at 138:07–14, and that Zhou had the autonomy to move back and forth between the project and Bright Way, *id.* at 197:11–21. Li also testified that while he had the power to ask his Bright Way employees to work at the project, they had to consent. *Id.* at 198:08–21. Factor (3) weighs in favor of Zhou being an exclusive employee of Hamilton Services, because he applied for and received workers' compensation benefits under their workers' compensation policy. *See* Gaza Decl., Ex. O. Regarding factor (4), while Zhou did ultimately receive paychecks from Hamilton Services, *see* Gaza Decl., Ex. N, the parties dispute what the payments were for and whether they were on behalf of Bright Way or Hamilton Services, *see* Zhou Counter Statement ¶¶ 51, 54. Further, Zhou was paid by Hamilton Services only after his accident, and he implies that had the accident not occurred, he would have continued to be paid by Bright Way. *See* Zhou Opp'n 16–17.

Because the facts reveal a genuine dispute over whether Zhou was exclusively an employee of Hamilton Services, and reasonable minds could disagree over his employment status, United's motion for summary judgment on this ground is denied.

### 3. Genuine disputes of material fact preclude a summary judgment determination that Zhou was a special employee of Hamilton Services at the time of the accident.

United argues that even if Zhou was not an "actual employee" of Hamilton Services, he was at least a "special employee" of Hamilton Services, and that special employees fall under the Contractor Exclusion. *See* United Mot. Summ. J. 22–27. Under New York law, a general employee of one employer may be considered a special employee of another employer if the employee is "transferred for a limited period of time" from the general employer to the special employer. *See Thompson v. Grumman Aerospace Corp.*, 585 N.E.2d 355, 357 (N.Y. 1991). "[S]pecial employment will not be found absent a clear demonstration of surrender of control by the general employer and assumption of control by the special employer." *Cipollone v. Aramark Healthcare Support Servs, LLC*, No. 10 CV 175(RML), 2012 WL 683578, at *5 (E.D.N.Y. Mar. 2, 2012) (quoting *Bellamy v. Columbia Univ.*, 851 N.Y.S.2d 406, 408 (N.Y. App. Div. 2008) (internal citations omitted)). The "transfer of control" determination is a fact-specific one not typically resolved at the summary judgment stage. *Id.* "Only where the [moving party] is able to demonstrate conclusively that it has assumed exclusive control over the manner, details and ultimate result of the employee's work is summary adjudication of special employment status and consequent dismissal of an action proper." *Id.* In this case, it is unclear whether Hamilton Services assumed exclusive control over Zhou's work. As discussed *supra*, construing the evidence in Zhou's favor, he was also working at Bright Way while performing tasks at the project. Further, while United argues that Li was acting as head of Hamilton Services when he

directed Zhou to work at the project, *see* United 56.1 ¶ 59; Li Dep. 198:22–99:03, Zhou claims

that Li was acting in his capacity as boss of Bright Way, *see* Zhou Counter-Statement ¶¶ 33–35.

Because there are disputed material facts, and special employment is not typically resolved on

summary judgment, I deny United's motion for summary judgment on this ground.

    **4.   Genuine disputes of material fact preclude a summary judgment determination that Zhou was an agent of Hamilton Services at the time of the accident.**

    According to United, even if Zhou was an employee of Bright Way, he was also an agent

of Hamilton Services, and the Contractor Exclusion applies to agents of contractors. *See* United

Mot. Summ J. 25 n.5. "Agency is a legal relationship between a principal and an agent, which

results from the manifestation of consent by one person to another that the other shall act on his

behalf and subject to his control, and consent by the other so to act." *Id.* (citing cases (citations

omitted)). Although it is undisputed that Zhou went to work at the project at Li's direction, the

parties dispute whether Li was directing Zhou as boss of Bright Way or Hamilton Services. *See*

United 56.1 ¶ 59; Li Dep. 198:22–99:03; Zhou Counter-Statement ¶¶ 33–35. According to Zhou,

he was working at the Bright Way office when Li directed him to install the thermostat cable at

the project on the day of the accident. *See* Zhou 56.1 ¶¶ 20–21. Further, Zhou claims that on the

day of the accident, he was acting as a Bright Way employee and had never heard of Hamilton

Services. *See id.* ¶ 24; Zhou Dep. 146:11–15. Li even testified that he did not clearly

communicate to Zhou that he would be working for Hamilton Services in connection with his

work at the project. *See* Li Dep. 176:20–77:03. Drawing all inferences in Zhou's favor, a

reasonable trier of fact could find that Li was acting as boss of Bright Way in directing Zhou to

work at the project, and thus that no agency relationship existed between Hamilton Services and

Zhou. Further, "where the circumstances raise the possibility of a principal-agent relationship,

and no written authority for the agency is established, questions as to the existence and scope of the agency must be submitted to a [trier of fact]." *Time Warner City Cable v. Adelphi Univ.*, 27 A.D.3d 551, 553 (N.Y. App. Div. 2006). Here, because the material facts are disputed and there is no written authority for the agency relationship, summary judgment is improper.

### 5. Genuine disputes of material fact prelude a summary judgment determination that Hamilton Services and Bright Way entered into an implied contract.

United's final argument is that even if Zhou was an employee of Bright Way, Zhou would fall under the Contractor Exclusion because Bright Way and Hamilton Services entered into an implied contract for Zhou to perform work on the project. *See* United Mot. Summ. J. 27–29. "Under New York law, the conduct of the parties may lead to the inference of a binding agreement: A contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct." *Brown v. St. Paul Travelers Co.*, 331 F. App'x 68, 70 (2d Cir. 2009) (quoting *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 582 (2d Cir. 2006)). An implied-in-fact contract under New York law requires "consideration, mutual assent, legal capacity and legal subject matter." *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 645 (S.D.N.Y. 2011) (quoting *Maas v. Cornell Univ.*, 721 N.E.2d 966, 970 (N.Y. 1999)). "Mutual assent" entails assent to the contract's essential terms and conditions, and "[i]f an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract." *Edelman v. Poster*, 72 A.D.3d 182, 184 (N.Y. App. Div. 2010); *see also Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 359 (S.D.N.Y. 2012). "Material terms" include "subject matter, price, payment terms, quantity, duration, compensation, and the dates of delivery and production." *Berkson v. Gogo LLC*, 97 F.

Supp. 3d 359, 392 (E.D.N.Y. 2015).

In this case, the material terms of any implied contract between Bright Way and Hamilton Services are far from certain, so summary judgment is improper. For example, the parties provide different descriptions of the financial arrangement between Bright Way and Hamilton Services. Under this argument, United claims that "Bright Way furnished an employee to Hamilton Services to run the telephone and thermostat cable at the Project in exchange for Hamilton Services' agreement to pay that employee's wages and workers compensation benefits, which Hamilton did." United Mot. Summ. J. 29. Thus, United argues that Hamilton Services was paying Zhou as a Bright Way employee. While Zhou agrees that he was paid by Hamilton Services as a Bright Way employee, he claims that this was not part of an agreed upon compensation plan but rather was a decision made by Li post-accident "to avoid possible fines and to obtain [workers' compensation] coverage without delay." Zhou Opp'n 17. Li, on the other hand, asserts that Bright Way was not a subcontractor on the project, was not paid for any work concerning the project, and that Zhou was always going to be paid by Hamilton Services as a Hamilton Services employee for his work on the project. *See* David Li Aff., ECF No 33-2; Li Dep. 95:12–17, 197:22–98:07. The evidence in this case – including Zhou's movement between Bright Way and the project, Li's dual role as principal of Hamilton Services and Bright Way, Hamilton Services' payments to Zhou, and the fact that these payments did occur post-accident – could reasonably be construed to support each of the alleged financial arrangements. Thus, because the facts reveal significant uncertainty regarding the terms of the Bright Way-Hamilton Services relationship, United's motion for summary judgment is denied. *See* 22 N.Y. Jur. 2d *Contracts* § 216, Westlaw (database updated Aug. 2018) ("Where the understanding of the parties to a contract is doubtful, it is to be determined as a question of fact in light of the

surrounding circumstances, and summary judgment is inappropriate.").[12]

## C. Zhou's motion for summary judgment on collateral estoppel grounds is denied[13]

Zhou argues that United is collaterally estopped from claiming that Zhou was a Hamilton Services employee because he was declared a Bright Way employee in the underlying state action. *See* Zhou Mem. of Law in Supp. Mot. Summ. J. 3, ECF No. 32-2 ("Zhou Mot. Summ. J."); Zhou Reply 5. "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) (citing *Kaufman v. Eli Lilly & Co.*, 482 N.E.2d 63, 67 (N.Y. 1985)). "The litigant seeking the benefit of collateral estoppel must demonstrate that the decisive issue was necessarily decided in the prior action against a party, or one in privity with a party. The party to be precluded from relitigating the issue bears the burden of demonstrating the absence of a full and fair opportunity to contest the prior determination." *Buechel v. Bain*, 766 N.E.2d 914, 919 (N.Y. 2001) (citation omitted). United argues that, because it was not a party to the state court action, it did not have a full and fair opportunity to litigate the issue of Zhou's employment. *See* United Mot. Summ. J. 18 n.4. In response, Zhou argues that collateral estoppel should apply because United was in privity with 828 Hamilton in the underlying state action. *See* Zhou Reply 5. Although privity is not clearly defined, it "includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action,

---

[12] Even if Bright Way and Hamilton Services did enter into an implied contract, it is questionable whether this arrangement would place Zhou under the Contractor Exclusion. United does not contend, and Li explicitly denies, that Bright Way was a subcontractor on the project. As Zhou points out, "the terms of the subject exclusion do not exclude an employee . . . that was not a subcontractor." Zhou Opp'n 30.

[13] As discussed *supra* n.2, Zhou's arguments for summary judgment incorporate 828 Hamilton's arguments.

and [those who are] coparties to a prior action." *Buechel*, 766 N.E.2d at 920 (citing *Matter of Juan C. v. Cortines*, 679 N.E.2d 1061, 1065 (N.Y. 1997)). United is correct that "[a]s a disclaiming insurer, United . . . is not in privity with 828 Hamilton pursuant to *Buechel*, particularly considering that invoking privity to bind a non-party to prior adjudications must be done conservatively and with caution." United Reply 12 n.8 (citing *Buechel*, 766 N.E.2d at 920). Because Zhou has not met his burden of demonstrating privity, and United has met its burden of showing it did not have a full and fair opportunity to litigate the issue of Zhou's employment, Zhou's motion for summary judgment on collateral estoppel grounds is denied.

## CONCLUSION

For the reasons stated in this opinion, disputed issues of material fact preclude a determination on whether Zhou's injury falls within the coverage provision and on whether he is subject to the Contractor Exclusion. Accordingly, the parties' cross-motions for summary judgment are denied.

SO ORDERED.


_____/s/_____
Allyne R. Ross
United States District Judge

Dated:    November 6, 2018
          Brooklyn, New York